1  **Bruce Berline, Esq.**
   **Law Office of Bruce Berline**
2  2nd Floor, Macaranas Building
   P.O. Box 5682 CHRB
3  Garapan, Saipan, MP 96950
   Telephone: (670) 233-3663
4  Facsimile: (670) 233-5262

5
   Attorney for Plaintiff Yoko Kamiyama
6

F I L E D
Clerk
District Court

JUL 10 2008

For The Northern Mariana Islands
By_____
         (Deputy Clerk)

7              IN THE UNITED STATES DISTRICT COURT

8                            FOR THE

9                   NORTHERN MARIANA ISLANDS

10 YOKO KAMIYAMA,                      )   CV NO. 08 - 00030
11                                     )
         Plaintiff,                    )
12                                     )   COMPLAINT
       v.                              )
13                                     )   DEMAND FOR JURY TRIAL
   BRENT J. HINKEMEYER, TAGA AIR       )
14 CHARTER SERVICES, INC., TINIAN      )
   DYNASTY HOTEL, INC., HONG KONG      )
15 ENTERTAINMENT (OVERSEAS)            )
   INVESTMENT, LTD., and DOES 1-75,    )
16                                     )
         Defendants.                   )
17                                     )
                                       )
18

19                         **INTRODUCTION**

20       Plaintiff Yoko Kamiyama (hereinafter referred to as "Plaintiff," or "Plaintiff Kamiyama"), by

21 and through her counsel, Bruce Berline, hereby brings this action to recover damages for injuries,

22 including severe mental and physical injuries, suffered by Plaintiff Kamiyama when, on August 11,

23 2006, an airplane in which Plaintiff Kamiyama and others were riding in, crashed and thereafter burst

24 into flames – destroying the airplane. Accordingly, Plaintiff Kamiyama alleges the following:

25                      **JURISDICTION/JURY TRIAL**

26    1.    This is a civil action. Plaintiff is a citizen and resident of Japan while the defendants

27 consists of a citizen and resident of a state within the United States or are corporations with principal

28 places of business located in the Commonwealth of the Northern Mariana Island ("CNMI"), and the

amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00). Thus, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a) and (d).

2. Alternatively, this Court has subject matter jurisdiction under 28 U.S.C. § 1331, in that this action arises under the laws, regulations, and treaties of the United States, including the Warsaw Convention and its progeny, namely the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Montreal, Canada, on May 28, 1999.

3. This Court has personal jurisdiction over the parties to this civil action.

4. Venue is proper in this matter pursuant 28 U.S.C. §1391(a) and (c) and under the applicable treaties of the United States.

5. The factual and jurisdictional grounds upon which Plaintiff Kamiyama's claims are premised entitle Plaintiff to a trial by jury. Plaintiff Kamiyama hereby demands a trial by jury.

**PARTIES**

6. Plaintiff Kamiyama is presently, and for all times mentioned herein was, a citizen of Japan residing in Utsunomiya City.

7. Plaintiff, based upon belief and information, alleges that Defendant Brent J. Hinkemeyer ("Pilot Hinkemeyer") is a citizen and resident of a state within the United States and was the pilot in command of the Piper Cherokee, model number PA32-300, registration number N4509T (hereinafter the "Airplane"), when it crashed on August 11, 2006.

8. On and before August 11, 2006, Pilot Hinkemeyer was employed by Defendant Tinian Dynasty Hotel, Inc., Defendant Taga Air Charter Services, Inc., and/or Defendant Hong Kong Entertainment (Overseas) Investment, Ltd.

9. Defendant Taga Air Charter Services, Inc., ("Taga Air"), at all times relevant to this complaint, was a corporation organized and existing under the laws of the CNMI with its principal place of business in the CNMI.

10. Taga Air, at all times relevant to this complaint, was a common carrier, engaged in the business of providing air transportation and air services, including the transportation of passengers for hire by air. Alternatively, Taga Air was a private air charter company engaged in the business of air transportation, including the transportation, by air, of passengers for hire.

11. On and before August 11, 2006, Taga Air was the registered owner of the Airplane and was responsible for operational control of the Airplane.

12. Defendant Tinian Dynasty Hotel, Inc., ("Dynasty Hotel"), at all times relevant to this complaint, was a corporation organized and existing under the laws of the CNMI with its principal place of business in the CNMI.

13. Defendant Dynasty Hotel is a business management service which operates and manages a hotel.

14. Prior to August 11, 2006, Defendant Dynasty Hotel leased the Airplane and was responsible for operational control of the Airplane on August 11, 2006.

15. At the time of the Airplane's August 11, 2006 flight, Defendant Dynasty Hotel did not have authorization to conduct air operations under the Federal Aviation Regulations ("FAR"), Part 135.

16. At all times relevant hereto, Defendant Hong Kong Entertainment (Overseas) Investment, Ltd. ("Hong Kong Entertainment") is a corporation organized and existing under the laws of the CNMI with its principal place of business in the CNMI.

17 Defendant Hong Kong Entertainment is a hotel and real estate development corporation involved in tourist related activities.

18. At the time of the Airplane's August 11, 2006 flight, Defendant Hong Kong Entertainment did not have authorization to conduct air operations under FAR, Part 135.

19. Defendants DOES 1-75, inclusive, are sued herein under fictitious names for the reason that, despite diligent and good faith efforts to obtain information, their true names, identities, and capacities, whether individual, corporate, or otherwise, are presently unknown to Plaintiff, except that they include, but are not limited to, other maintenance providers, service providers, inspectors, owners,

operators, lessees of the Airplane, and/or the agents, servants, employers, employees, representatives, co-venturers, associates, vendors, suppliers, manufacturers, lessors, insurers, insurance agents, subcontractors or contractors of the named defendants.

20.  Plaintiff is informed and believes and thereon alleges, that each of the defendants designated as a DOE is negligently, consciously, wilfully, intentionally, knowingly, recklessly, or otherwise tortuously or legally responsible in some manner for the events and happenings referred to herein, and negligently, wilfully intentionally, knowingly, recklessly, or otherwise tortuously caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged, either through said defendants' own conduct, or through the conduct of their agents, servants, or employees, and each of them.

21.  Plaintiff and/or her representatives have made diligent and good faith efforts to ascertain the full names and identities, the extent and nature of interests, of Doe Defendants, in the events upon which Plaintiff's claims are premised.

22.  Plaintiff remains unable, at this time, to identify with particularity, those additional defendants against whom Plaintiff has additional prospective claims, and will seek leave to amend this complaint, in order to more specifically name and identify Defendants DOES 1-75, if and when the identities of those defendants are more fully and accurately determined (hereinafter all defendants, including Does 1-75, are referred to, collectively, as the "Defendants").

23.  Defendants Taga Air, Dynasty Hotel and Hong Kong Entertainment acted as each others' agents, within the course and scope of the agency, with respect to the conduct alleged in this complaint and/or were joint venturers.

24.  Plaintiff is informed and believes and thereupon alleges that each of the Defendants was the agent and employee of each of the remaining Defendants and, in doing the things hereinafter alleged, was acting within the course of such agency and employment.

25.  Plaintiff is informed and believes and thereupon alleges that each of the Defendants aided, abetted, ratified, authorized, incited, compelled, negligently supervised and/or coerced each act of each

remaining Defendant, and/or acted pursuant to a common plan with each remaining Defendant.

26. There exists, and at all relevant times there existed, a unity of interest and ownership between these Defendants such that any individuality and separateness between them ceased and they acted as the alter ego of each other. Adherence to the fiction of the separate existence of these Defendants as distinct entities will permit an abuse of the corporate privilege, sanction fraud and promote injustice.

**FACTS**

27. On August 11, 2006, the Airplane, piloted by Pilot Hinkemeyer, in which Plaintiff Kamiyama was riding in, crashed into the jungle on Saipan, CNMI, and thereafter burst into flames – destroying the Airplane (the "Incident").

28. On the day of, and prior to, the Incident, the Defendants serviced, maintained, repaired, certified, operated and/or controlled the Airplane in violation of the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable Federal Aviation Administration (the "FAA") rules and regulations, including, without limitation, the Federal Aviation Regulations.

29. On August 11, 2006, the Defendants operated and flew the Airplane under FAR, part 91.

30. However, the FAR required the August 11, 2006 flight to be conducted under FAR, part 135.

31. Moreover, on the day of the Incident, Pilot Hinkemeyer was not authorized to fly the Airplane under FAR, part 135.

32. Up to and including the day of the Incident, Taga Air's policy was to fuel only the Airplane's main inboard wing tanks, leaving the Airplane's outboard wing tip tanks empty.

33. Such policies were in violation of the explicit language contained in the Airplane's flight, operating and/or owner's manual and applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations.

34. Moreover, prior to the Incident, the Airplane's manufacturer issued a mandatory service bulletin regarding the installation of shoulder harnesses for all passengers.

35. The mandatory service bulletin included a warning not to seat passengers in the Airplane's optional seventh seat if it was installed.

36. Taga Air determined that compliance with said mandatory service bulletin was required and that the provisions of the mandatory service bulletin had been complied with.

37. The FAA's rules and regulations, including, without limitation, FAR Part 135, requires compliance with manufacturer's mandatory service bulletins.

38. Additionally, on the day of the Incident, the Airplane was improperly loaded and loaded in excess of its allowable operating weight prior to prior takeoff, in violation of the Airplane's flight, operating and/or owner's manual, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations.

39. Further, Defendants failed to obtain liability insurance on the Airplane and provide the FAA with evidence of such liability insurance for the Airplane.

40. Such failure to procure, and provide the FAA with evidence of liability insurance is a violation of the FAA rules and regulations, including, without limitation, the Federal Aviation Regulations, and certain treaties of the United States.

41. Despite the many deficiencies known to exist with the Airplane, its systems and its crew, the Defendants informed the FAA that the Airplane, and its systems had been inspected and determined to be safe, airworthy and in compliance with FAA rules and regulations including, without limitation, the FAA's airworthiness requirements.

42. Moreover, the Defendants held the Airplane, its systems, and its crew, out to the public, which included Plaintiff Kamiyama, as being safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including without limitation, the Federal Aviation Regulations.

43. Prior to August 11, 2006, Plaintiff Kamiyama purchased round-trip airline tickets from a Japan travel agency in order to fly from Japan to Tinian, CNMI.

44. On or about August 10, 2006, Plaintiff Kamiyama boarded a Northwest Airlines flight at Tokyo Narita International Airport and flew, nonstop, to the Saipan International Airport.

45. On August 11, 2006, immediately after deplaning from the Northwest flight, Plaintiff Kamiyami walked over to the domestic terminal located at the Saipan International Airport, and boarded the Airplane, along with five other passengers, in order to fly to Tinian, CNMI.

46. Plaintiff Kamiyama sat on the right side of the Airplane, in the seat directly behind Patrick Timmerman.

47. Passenger Patrick Timmerman, who also was a licensed pilot employed by Tinian Dynasty, sat in the front, right seat of the Airplane next to Pilot Hinkemeyer.

48. Two other passengers sat in the other two seats located in the same row in which Plaintiff Kamiyama was sitting, while the remaining two passengers sat in the back row of seats.

49. On August 11, 2006, at approximately 2:15 a.m., Saipan standard time, Pilot Hinkemeyer taxied the Aircraft onto Saipan International Airport's Runway 07 ("Runway 07").

50. Runway 07 is 8,700 feet long.

51. However, Pilot Hinkemeyer did not taxi to the threshold of Runway 07 in order to use the runway's entire length of 8,700 feet; instead, Pilot Hinkemeyer began the takeoff from the intersection of Runway 07 and Bravo taxiway.

52. Pilot Hinkemeyer accelerated the Airplane down Runway 07.

53. As the Airplane became airborne, it began its initial climb to altitude.

54. Shortly after becoming airborne, while still in its initial climb, and with Plaintiff Kamiyama aboard, the Airplane's single engine lost power and the Airplane, along with Plaintiff Kamiyama, crashed into the jungle about one half mile southeast of the departure end of Runway 07.

55. After the Airplane crashed into the jungle, the Airplane's fuel selector valve was found to be positioned so as to draw fuel from the left outboard wing tip tank.

56. As a result of the Airplane crashing into the jungle, Plaintiff Kamiyama sustained serious and severe injuries, many of which are permanent in nature, including, without limitation, burns on her arms and legs, fractured and broken bones, various contusions and other injuries. Plaintiff also suffered and continues to suffer tremendous mental pain and anguish as well as suffering a severe shock to her entire system. As a further result of Plaintiff's injuries, Plaintiff has been and is now and will be in the future prevented from participating in and enjoying the normal pleasures of life to which Plaintiff was formerly accustomed.

57. Said injuries, along with other injuries and damages, have caused, and continue to cause, and will in the future continue to cause Plaintiff great physical pain and mental anguish and suffering. Furthermore, such injuries have caused Plaintiff economic damages in the form of lost wages, as well as past, present and future medical, hospital and other related expenses.

### FIRST CAUSE OF ACTION
NEGLIGENCE

58. Plaintiff repeats and realleges, and incorporates herein by reference, each and every allegation contained in the preceding paragraphs.

59. The August 11, 2006 crash of the Airplane and resulting injuries and damages were caused by Defendants negligently operating, maintaining, certifying, servicing and/or controlling the Aircraft.

60. Defendants, and each of them, serviced, maintained, repaired, certified, operated and/or controlled the Airplane.

61. Defendants, and each of them, as common carriers, innkeepers, or other entities, owed Plaintiff an affirmative duty to exercise reasonable care in servicing, maintaining, repairing, certifying, operating and/or controlling the Airplane.

62. Defendants, and each of them, including their officers, agents, employees and servants, breached the aforementioned duties by, *inter alia*,:

a. Failing to properly service, maintain, certify, inspect, operate, insure and/or control the Airplane pursuant to the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations;

b. Failing to provide adequately trained, and/or certified operators of the Airplane;

c. Failing to properly approve operators of the Airplane and/or,

d. Failing to properly and adequately train, instruct, educate and/or advise persons maintaining, repairing, operating and controlling the Airplane.

63. Defendants also failed to otherwise exercise due care with respect to the matters alleged in this complaint

64. The Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations, provide duties of care and are designed to protect, *inter alia*, passengers from the danger and hazards of air travel.

65. Plaintiff is a member of the class which the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations, are designed to protect.

66. Plaintiff suffered the type and kind of harm which the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations, were intended to prevent.

67. Moreover, the Airplane was within the exclusive control of Defendants, including their agents, servants, officer and or other employees and the events leading up to and causing Plaintiff's injuries are such as in the ordinary course of things would not occur if the one having exclusive control uses proper care, and thus the doctrine of *Res Ipsa Loquitur* is applicable and should be applied in this

case.

68. The Defendants' above described conduct constitutes gross negligence, and/or a reckless and/or willful, wanton disregard for Plaintiff's safety and entitles Plaintiff to an award of punitive damages in an amount according to proof at trial.

69. Defendants's negligence and/or gross negligence, and each of them, as herein alleged, directly and proximately caused Plaintiff to suffer damages including, without limitation, past and future pain and suffering, past and future medical and other related expenses, past and future wage losses, and future economic opportunity losses. Accordingly, Plaintiff has sustained and incurred damages in an amount according to proof at trial.

**SECOND CAUSE OF ACTION**
INTENTIONAL MISREPRESENTATION

70. Plaintiff repeats and realleges, and incorporates herein by reference, each and every allegation contained in the preceding paragraphs.

71. Defendants misrepresented the safety of the Airplane, its systems, and its crew to the FAA and to the public, including Plaintiff, specifically, without limitation, by holding out the Airplane, its systems, and its crew as being safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations when the Airplane was not in such compliance.

72. Defendants intended to induce the public's reliance, including the Plaintiff's reliance, upon such representations.

73. Defendants knew the statements were false and/or recklessly disregarded the truth in making such representations.

74. Plaintiff Kamiyama reasonably relied upon the representations.

75. The Defendants' misrepresentations were a proximate cause of Plaintiff's injuries.

76. The representations constituted material misrepresentations that deceptively characterized the Airplane, its systems and its crew as safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations.

77. The Defendants' conduct in making the representations was reckless and wanton.

78. Plaintiff was deceived into believing that the Airplane was safe when in fact there was a high likelihood of harm and the resulting harm could be foreseeably devastating.

79. Defendants knew or should have known of the extreme danger that existed. In spite of this knowledge, they willfully and unconsciously misrepresented that the Airplane, its systems and crew as being safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulation.

80. As a direct and proximate result of said tortuous acts, omissions or conduct of Defendants and each of them as herein alleged, Plaintiff has sustained and incurred and are certain in the future to sustain and incur losses and damages in an amount according to proof at trial.

81. As a result of that reckless and wanton conduct, on the part of the Defendants, Plaintiff is entitled to punitive damages in an amount according to proof at trial.

### THIRD CAUSE OF ACTION
NEGLIGENT MISREPRESENTATION

82. Plaintiff repeats and realleges, and incorporates herein by reference, each and every allegation contained in the preceding paragraphs.

83. Defendants misrepresented the quality of the Airplane, its systems, and its crew as being safe and fully certified and in full compliance with the Airplane's flight, operating and/or owner's manual, applicable Airworthiness Directives, Circulars, Advisories, Service Bulletins, and/or applicable FAA rules and regulations, including, without limitation, the Federal Aviation Regulations when the

1  Airplane was not in such compliance.

2  84.  In so misrepresenting the safety of Airplane, its systems, and its crew, Defendants breached their duty of due care to Plaintiff.

85.  Plaintiff reasonably relied upon the representations.

86.  The Defendants' misrepresentations were a proximate cause of Plaintiff's injuries.

87.  As a direct and proximate result of said tortuous acts, omissions or conduct of Defendants and each of them as herein alleged, Plaintiff has sustained and incurred and are certain in the future to sustain and incur losses and damages in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION**
ACTION UNDER CNMI CONSUMER PROTECTION LAWS

88.  Plaintiff repeats and realleges, and incorporates herein by reference, each and every allegation contained in the preceding paragraphs.

89.  Defendants conduct in marketing, advertising, selling, servicing, maintaining, inspecting, operating, insuring. controlling and/or placing the Airplane and the service of transporting paying passengers on the market constitutes violations of the CNMI's Consumer Protection Act, 4 CMC §§ 5101 et seq.

90.  Specifically, without limitation, Defendants engaged in the following unfair methods and/or deceptive acts:

(a) Caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of the Airplane and its crew;

(b) Represented that the Airplane had sponsorship, approval, characteristics, and/or quantities that they did not have and/or that Pilot Hinkemeyer was sponsored, approved, had the appropriated status and/or affiliation that he did not have;

(c) Represented that the Airplane was of a particular standard when the Airplane did not meet that particular standard;

(d) Engaged in acts and/or practices which were unfair or deceptive to the Plaintiff;

(e) Represented that the Airplane was fit for a particular purpose, when it was not fit for that purpose;

(f) Represented that the service of flying the Airplane was provided by qualified, certified and/or authorized pilot when the Defendants knew or should have known that he was not so qualified, certified and/or authorized; and/or,

(g) Introduced into commerce a service which the Defendants knew or should have known was unsafe or which the Defendants knew or should have known would cause an unsafe condition in normal use, including performing a service which may cause an unsafe condition.

91. As a result of the above omissions and commissions, taken singularly or collectively, Plaintiff was injured.

92. In addition to actual damages, Plaintiff is entitled to liquidated damages and attorneys fees and costs.

**FIFTH CAUSE OF ACTION**
ACTION UNDER UNITED STATES TREATY

93. Plaintiff repeats and realleges, and incorporates herein by reference, each and every allegation contained in the preceding paragraphs.

94. Under the provisions of the treaties of the United States, including the Warsaw Convention and its progeny namely the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Montreal, Canada, on May 28, 1999, Defendants conduct, including but not limited to the negligent acts or omissions set forth above, constitutes an accident, in that the conduct was an unexpected and unusual event or happening external to the passenger, Plaintiff Kamiyama, and was a causal link to her injuries and damages.

95. Such accident took place onboard the Airplane or in the course of any operations of embarking or disembarking.

96. At the time of Plaintiff Kamiyama's injuries and damages, she was engaged in undivided international carriage and/or transportation.

97. The negligent acts and/or omissions of Defendants, and each of them, including but not limited to the negligent acts or omissions set forth above, was a proximate cause in Plaintiff Kamiyama's injuries and damages.

98. Plaintiff Kamiyama's damages exceed 100,000 special drawing rights.

99. Defendants' misconduct was willful.

**WHEREFORE**, Plaintiff requests the following from Defendants, jointly and severally,:

1. General and special damages in the amount of to be proven at trial;
2. Punitive damages in an amount to be determined at trial;
3. Liquidated damages equal to the amount of actual damages as determined at trial;
4. Costs of the lawsuit;
5. Attorneys fees;
6. Pre-judgment interest; and,
7. Such other and further relief as is deemed lawful, just, or equitable under the circumstances.

Dated this 10th day of July, 2008.

BRUCE BERLINE
Attorney for Plaintiff Yoko Kamiyama
P.O. Box 5682 CHRB
Saipan, MP 96950